1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

ADRIENNE CHARA N.,

7

Plaintiff,

CASE NO. 3:20-cv-05232-BAT

8

v.

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE**

9

COMMISSIONER OF SOCIAL SECURITY,

10

Defendant.

11

12

Plaintiff seeks review of the denial of her application for Title II disability and disability

13

insurance benefits and Title XVI supplemental security income. She contends that the

14

Administrative Law Judge ("ALJ") erred when he failed to account for all severe and non-severe

15

medical limitations in fashioning the residual functioning capacity ("RFC"); wrongfully rejected

16

psychiatric limitations; and gave improper weight to the opinions of non-examining doctors. Dkt.

17

15. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this case.

18

BACKGROUND

19

A.    Procedural History

20

At age 50, Plaintiff filed for Title II (SSDI) and Title XVI (SSI) disability benefits,

21

alleging in both claims that she became disabled on April 3, 2016. After both claims were denied

22

initially and upon reconsideration, a hearing request was filed. Plaintiff appeared at the hearing

23

with a representative and a vocational expert ("VE") appeared and testified. The ALJ issued an

unfavorable decision on December 12, 2018. Tr. 13-38. Plaintiff filed a pro forma appeal to the

1   Appeals Council (AC) on February 8, 2019. After an extension by the AC, a formal request for

2   review of the decision of the ALJ was filed on May 10, 2019. Tr. 339-341. The AC denied

3   review on January 13, 2020. Tr. 1-6. This timely appeal followed. Dkt. 1.

4   B.   ALJ's Decision

5        Utilizing the five-step disability evaluation process (20 C.F.R. §§ 404.1520, 416.920), the

6   ALJ made the following findings:

7        At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

8   her alleged disability onset date of April 3, 2016. Tr. 19, Finding 2. 20 C.F.R. §§ 404.1520(b),

9   416.920(b).

10       At step two, the ALJ found Plaintiff had the following severe impairments: status post

11  left knee replacement, bilateral sacroiliac degenerative joint disease, obesity, major depressive

12  disorder, and post-traumatic stress disorder (PTSD). Tr. 19, Finding 3. 20 C.F.R. §§ 404.1520(c),

13  416.920(c).

14       At step three, the ALJ found Plaintiff's impairments did not meet or equal the

15  requirements of a listed impairment. Tr. 22, Finding 4. 20 C.F.R. §§ 404.1520(a)(4)(iii),

16  404.1520(d); 416.920(a)(4)(iii), 416.920(d) .

17       The ALJ determined Plaintiff had a RFC, 20 C.F.R. §§ 404.1520(e), 404.1545,

18  416.920(e), 416.945(e), to perform light work as defined in C.F.R. §§ 404.1567(b) and

19  416.967(b) except she could only occasionally climb ladders, ropes, or scaffolds and

20  occasionally crawl. She could have occasional exposure to vibration and extreme cold

21  temperatures. She could understand, remember, and apply detailed, but not complex,

22  instructions, but not in a fast paced, production type environment, with only occasional

23  interaction with the general public. Tr. 24, Finding 5.

1   At step four, the ALJ found Plaintiff was not able to perform her past relevant work. Tr.

2   31, Findings 6. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

3   At step five, the ALJ found that, based on the above residual functional capacity, Plaintiff

4   could perform work existing in significant numbers in the national economy; specifically noting

5   the positions identified by the vocational expert: Office Helper, Marker, and Small Products

6   Assembler. Tr. 32, Finding 10. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v),

7   416.920(g).

8   DISCUSSION

9   The ALJ must consider the combined effect of a claimant's impairments, severe and non-

10   severe, on the ability to function, without regard to whether each alone is sufficiently severe. *See*

11   42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). The combined effect of all medically determinable

12   physical and mental impairments should be considered at step three and four. 20 C.F.R. §

13   416.926(a)(c); § 416.945(a)(2). The failure to do so is legal error requiring remand. *Lester v.*

14   *Chater*, 81 F.3d 821, 830 (9th Cir.1995).

15   A.   Physical Impairments

16   Plaintiff contends she has a combination of physical issues (knee,[1] back, and shoulder issues)

17   that are more limiting than found by the ALJ. Dkt. 15, pp. 5-10. She argues that the ALJ erred in not

18   finding these to be severe impairments and even if not severe, failed to properly incorporate these

19   limitations in the RFC.

20   "An impairment or combination of impairments can be found 'not severe' only if the

21   evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

22   ability to work.'" *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). A non-severe impairment is

23

---

[1] The ALJ found Plaintiff to have a severe impairment involving her left knee; specifically, "status post left knee replacement." Tr. 19.

one that "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).[2] Plaintiff bears the burden to establish the existence of a severe impairment that prevented her from performing substantial gainful activity that lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505, 404.1512, 416.905, 416.912; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

      1.   <u>Lower Back, Left or Right Shoulder, and Right Knee Impairments</u>

With regard to Plaintiff's complaints of lower back pain, limited range of motion, and tenderness in her back, the ALJ engaged in a comprehensive review of Plaintiff's medical records. Tr. 20. The ALJ noted that despite these complaints, Plaintiff maintained full strength and was neurologically intact; imaging results showed no more than mild changes on multiple imaging studies of the lumbar spine and no spinal canal stenosis at any level; Plaintiff was not a surgical candidate; other exams were unremarkable for abnormalities of the back, with no tenderness, normal strength, normal reflects, and a normal gait; physical therapy notes showed improvement with trunk exercises. Tr. Tr. 20, 410, 886, 408, 426-27, 428-29, 704, 712. An examination in 2018 showed slight tenderness of the lower lumbar spine, but the examinations also showed normal straight leg raise, normal strength, normal sensation, normal gait, and an ability to stand on her toes. Tr. 20, 935. Plaintiff's most recent MRI from March 2018 showed minimal lumbar neck to convex spinal curvature that could be related to spasm or positioning and mild degenerative changes with lower lumbar facet synovitis. Tr. 20, 1926. The ALJ compared the neural foraminal stenosis with Plaintiff's prior CT scan to conclude there was little change and no convincing nerve root impingement to explain radicular symptoms. *Id*. The MRI also revealed some disc disease of the thoracic spine but it

---

[2] Examples of basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 4

was described as scattered osteophyte formations with mild disc space low at T11-T12 and T12-L1 with an annular bulge with minimal to mild spinal canal stenosis without cord compression. *Id.*

The ALJ noted Plaintiff continued to have tenderness with flexion and extension of the back. Tr. 2019. After reviewing imaging results showing no more than mild changes on multiple imaging studies of the lumbar spine, imaging of the sacroiliac joints showing more extensive changes, and noting that Plaintiff did not obtain relief from an epidural injection and a lumbar facet injection, the ALJ concluded that these signs were more likely related to degenerative joint disease of the sacroiliac joints – which, as noted above, the ALJ found to be severe. He accounted for this within the RFC by limiting Plaintiff to light work with occasionally climbing ladders, ropes, or scaffolds and occasionally crawling, and occasional exposure to vibration and extreme cold temperatures. Tr. 19-20, 24.

2.   <u>Left Shoulder Pain</u>

With regard to Plaintiff's left shoulder pain related to a fall in 2015, the ALJ noted that x-rays showed acromioclavicular (AC) joint degenerative changes (Tr. 2322); a July 2017 MRI showed mild supraspinatus and infraspinatus tendinopathy without high-grade partial-thickness or full-thickness tear and moderate biceps tendinopathy within its intra-articular portion and into the entry of the bicipital groove (Tr. 21, 992-93), with some tenderness over the long head biceps, and pain with forward elevation but full strength. Tr. 21, 1095. The ALJ further noted that six weeks post-surgery (an arthroscopic labral debridement and long head bicepts tenodesis), Plaintiff had good pain control without medication and had regained excellent motion without physical therapy and maintained full strength. Tr. 21, 2337, 2338. Thus, the ALJ concluded this impairment did not meet the minimum 12 month durational requirement to be considered a severe impairment. Tr. 21.

3.   <u>Right Shoulder Pain</u>

With regard to Plaintiffs' complaint of right shoulder pain, the ALJ noted that an examination of her right shoulder in June 2017 was unremarkable and treatment notes in 2018 reflected full

strength and normal sensation and reflexes in Plaintiff's upper extremities. Tr. 21, 2322, 2020.

    4.    <u>Right Knee and Multiple Joint Pains</u>

With regard to Plaintiff's complaint of right knee and multiple joint pains, the ALJ noted that Plaintiff's rheumatoid factor was positive, but her sedimentation rate, cyclic citrullinated peptide (CCP), and extractable nuclear antigen (ENA) panel were negative. *Id.* He noted slight swelling and tenderness over the left middle finger proximal interphalangeal (PIP) joint and slight bilateral epicondyle tenderness during one exam, but examinations did not describe abnormalities of the right knee. Tr. 21, 930. In addition, x-rays of the right knee were normal and a rheumatologist ruled out rheumatoid arthritis. Tr. 21, 931, 1484. Thus, the ALJ concluded that the evidence did not describe limitations from right knee pain or epicondylitis that persisted for 12 months or more and Plaintiff's rheumatoid arthritis was not medically determinable because it was not supported by medically acceptable clinical or laboratory diagnostic techniques and was ruled out by a specialist. Tr. 21, 931.

In response, Plaintiff points to other records reflecting ongoing pain, facet arthritis of the left knee and ongoing pain post surgery; lumbar spondylosis, disc height loss and disc bulge, asymmettic erosive or inflamamatory sacroiliitis, an MRI showing disc bulges and foraminal stenosis; left shoulder tendinopathy and range of motion limitations post surgical debridement of the biceps tendon. Dkt. 15, p. 7 (internal citations omitted). As previously noted, the ALJ found Plaintiff's left knee condition to be severe. Additionally, the Court cannot say that the ALJ's assessment that Plaintiff's other physical limitations are not severe is either unreasonable or unsupported by the record. Alleged impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques and not only by Plaintiff's statements regarding her symptoms. 20 C.F.R. §§ 404.1508, 416.908. The ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation thereof, and made findings. Where the record is susceptible to more than one rationale interpretation, the Court is required to uphold the ALJ's finding as it is

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 6

supported by inferences reasonably drawn from the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.2008).[3]

5.      Opinion of Dr. Louis Enkema

Plaintiff also argues that the ALJ erred in rejecting the opinion of Dr. Louis Enkema, who performed a physical functional evaluation of Plaintiff on June 23, 2016.  Dkt. 15, Tr. 348-349. Dr. Enkema noted Plaintiff's left knee needed replacing, her right hip and left knee were painful, and she had anxiety and depression. Tr. 347. Dr. Enkema opined that Plaintiff's impairments resulted in moderate to marked limitations, that she was limited to sedentary work ("able to lift 10 pounds maximum and frequently lift or carry lightwight articles. Able to walk or stand only for brief periods.") Tr. 349. In Dr. Enkema's opinion, this current limitation on work activities would persist with available treatment for 3 to 6 months. Tr. 28, 347-349.

The ALJ gave little weight to Dr. Enkema's opinion because (1) although he completed the statement for purposes of DSHS benefits, he merely listed diagnoses without explanation; (2) he did not provide any medical prognosis or recommendations but deferred any additional tests, consultations, or treatment per DSHS' recommendations; (3) the statement was given after the first time he saw Plaintiff; (4) he notably did not provide Plaintiff's status over a period of 12 months or more; and (5) subsequent evidence shows surgery on the left knee with an improvement in functionality a few months after surgery. Tr. 28-29.

Plaintiff argues that the ALJ erred in finding Dr. Enkema provided little explanation for his findings because Dr. Enkema is "a treating source and has access to his records, some of which are in the exhibit file." (Tr. 352-353, 359-362). Dkt. 15, p. 7. However, an ALJ may reject a medical oinion that is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278

---

[3] After reviewing the medical evidence and evidence of evidence of Plaintiff's functional abilities, the ALJ concluded that her symptom testimony was not persuasive – Plaintiff does not dispute this finding.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 7

F.3d 947, 957 (9th Cir.2002) (citing *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986), 278 F.3d at 957.

Plaintiff further argues that "if the ALJ is not included to find [her] disabled, he has to reject this assessment because if a person is age 50, limited to unskilled work, with an RFC of sedentary, the regulations mandate a finding of disability under Grid rule 201.14. However, Plaintiff bears the burden to establish the existence of a severe impairment that prevented her from performing substantial gainful activity that lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505, 404.1512, 416.905, 416.912. Dr. Enkema specifically stated that he would estimate Plaintiff's current limitations to last only 3-6 months and therefore, his estimate was not significant or probative evidence about the existence or scope of Plaintiff's impairment beyond six months.

Plaintiff also argues that her left knee issue lasted more than 12 months because her knee replacement surgery was not performed until more than a year after Dr. Enkema's evaluation. Tr. 343-346, 363.  However, the ALJ noted evidence showing left knee surgery "with an improvement in functionality a few months after surgery."  Tr. 29, 501, 611, 410.

In sum, the ALJ did not err in discounting Dr. Enkema's assessment.

B.    Mental Limitations

Plaintiff argues that the ALJ failed to account for mental limitations assessed by April Delira, M.D. and improperly rejected the GAF score of 48, assessed by Maria Bernadette Bibiloni, M.S.W. Dkt. 15, pp. 7-9, 13.

1.    April DeLira, M.D.

On September 17, 2017, Dr. April DeLira performed a comprehensive psychiatric evaluation of Plaintiff. Tr. 918-923. Dr. DeLira diagnosed severe alcohol use disorder, PTSD, and major depressive disorder with psychotic features, severe. Tr. 922. Dr. DeLira found that Plaintiff has PTSD and a mood disorder, most likely depression with psychotic features and these are severely exacerbated and perpetuated by her severe alcohol use disorder. Dr. DeLira opined that because

Plaintiff has substantial periods of increased function, it is likely she is unable to control her symptoms when she is drinking heavilty and that Plaintiff would benefit from continuing dependency treatment in addition to medication management and therapy. *Id.*

Based on Plaintiff's performance on her cognitive examination, Dr. DeLira evaluated as "fair," Plaintiff's ability to perform simple and repetitive tasks, detailed and complex tasks, work activities on a consistent basis without special or additional instructions, and work duties at a sufficient pace. Tr. 922. Based on Plaintiff's interpersonal presentation, Dr. DeLira evaluated as "poor," Plaintiff's ability to maintain regular attendance in the workplace and complete a normal workday without interruptions; and "fair," as to Plaintiff's ability to interact with coworkers and superiors in the public and adapt to the usual stresses encountered in the workplace. Tr. 923.

Dr. DeLira concluded that based on her examination of Plaintiff and information available, Plaintiff's psychiatric diagnoses are somewhat treatable with medication management and psychotherapy, but Plaintiff's prognosis is fair to poor if she continues to use alchohol at her current level. With optimal care, Dr. DeLira opined that the likelihood the symptoms would improve over the next 12 months is fair but it is unlikely Plaintiff would function well in a typical workplace with her current level of alcohol use. Tr. 923.

The ALJ gave some, but not great weight to Dr. Delira's assessment of Plaintiff's "fair" abilities to perform simple and detailed tasks at a sufficient pace and "poor" ability to maintain regular attendance and complete a normal workday. Although Dr. DeLira failed to definine what she meant by "fair" abilities, the ALJ noted that the assessment of fair abilities (in interacting with others and performing simple and detailed tasks at a sufficient pace) is consistent with the results of Plaintiff's examination, including her interpersonal style, and intact thought processes (linear thought, remaining oriented, intact recent and remote memory, and ability to complete three-step commands). Tr. 29. The ALJ also noted that Dr. DeLira's findings in this regard were consistent with those of Plaintiff's treating professionals who found Plaintiff's thought process to be intact despite a

depressed or anxious mood. *Id.* (internal citations omitted). The ALJ concluded that the reduction in pace included in the RFC reduced the stress in the work environment and accommodated Plaintiff's alleged fatigue related to medication. Tr. 30.

The ALJ gave little weight to Dr. DeLira's assessment that Plaintiff had a poor ability to maintain regular attendance and complete a normal workday because Dr. DeLira failed to explain why Plaintiff's ability to do so is poor and relied too heavily on Plaintiff's alcohol use when making that assessment. The ALJ noted however, that the evidence shows that Plaintiff is able to stop drinking when she wanted to (as when she was taking pain medication) and therefore, the ALJ gave only some but not great weight as the evidence does not support a poor ability or inability to complete a normal workday. Tr. 30.

The ALJ did not err in his treatment of Dr. DeLira's assessment. First, the ALJ acknowledged that Dr. DeLira's "fair" assessments were consistent with other evidence in the record and incorporated a slower pace in the RFC to account for the level of ability. Second, the ALJ correctly noted that Dr. DeLira failed to explain her "poor" assessment as to Plaintiff's ability to complete a normal workday. The ALJ need not accept the opinion of any physician, including a treating physician, which is "brief and conclusory in form with little in the way of clinical findings to supports [its] conclusion. *See Thomas*, 278 F.3d at 957. The ALJ also concluded that Dr. DeLira relied too heavily on Plaintiff's alcohol use when making the assessment. Although Dr. DeLira stated that there was no evidence that Plaintiff's alcohol abuse had any impact on the assessment (Tr. 922), Dr. DeLira specifically tied the likelihood that Plaintiff would function well in a typical workplace with her current level of alcohol use. Tr. 923.

2.    Maria Bernadette Bibiloni, M.S.W.

Plaintiff also contends that the ALJ improperly rejected the Global Assessment of Functioning ("GAF") score of 48 given in April 2017 by a social worker, Maria Bernadette Biblioni, M.S.W., in evaluating Plaintiff for mental health services. Tr. 30, 833.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 10

It is well-established that ALJs must consider evidence from "other source" evidence submitted on behalf of a claimant. 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3). In the Ninth Circuit, lay witness testimony cannot be disregarded without comment. *Molina*, 674 F.3d at 1114 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). "Other source" opinion evidence may be discounted by an ALJ if the ALJ "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) (citing Diagnostic and Statistical Manual of Mental Disorders 20 (3rd. ed., rev.1987) ("DSM"). A GAF score of 55 indicates at least moderate symptoms or moderate difficulty in social, occupational, or social functioning. *Id*. at 12.[4]

The ALJ gave little weight to the GAF score because GAF scores consider more than just the Plaintiff's occupational functioning and no explanation was provided for the basis of the score. The ALJ further noted that the score represents serious symptoms, which are not consistent with evidence in the record showing Plaintiff maintained an intact thought process in spite of a depressed or anxious mood. Tr. 30 (citing 794, 796, 799, 802, 2215, 2217, 2220, 2224, 2228, 2233, 2243, 2248, 2275, 2278). The ALJ also found the GAF as inconsistent with Plaintiff's reports of going to the mall, eating out, getting her nails done, and going to the bookstore. Tr. 30  (citing 800, 802, 844, 2223, 2231). "Inconsistency with medical evidence" is a germane reason for discounting lay witness/other source evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

These are germane reasons for not accepting Ms. Bibiloni's GAF assessment and therefore, the ALJ did not err.

---

[4] As noted by the Commissioner, the fifth edition of the DSM no longer recommends using GAF ratings for mental disorders due to its lack of clarity and questionable psychometrics. DSM-V.

1

C.    State Agency Opinion

2

Plaintiff disagrees with the ALJ's decision to give significant weight to the RFC assessment

3

opinion of the State agency physician Debra Baylor, M.D., because Dr. Baylor did not have an

4

opportunity to review all of Plaintiff's records. Dkt. 16, pp. 10-13, Tr. 25, 118-47. Dr. Baylor

5

determined Plaintiff could perform light work except frequent balancing and climbing ramps and

6

stairs, occasional stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes or

7

scaffolds; and needed to avoid concentrated exposure to vitration, pulomonay irritants, and avoid all

8

exposure to hazards. Tr. 29 (Ex. 7A, 8A).

9

Under the treating physician rule in effect at the time Plaintiff filed her claim (January 31,

10

2017), a treating doctor's opinion is generally entitled to greater weight than an examining doctor's

11

opinion, and an examinating doctor's opinion is entitled to greather weight than a non-examining

12

doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.2014). An ALJ may only reject the

13

contradicted opinion of a treating doctor by giving "specific and legitimate" reasons. *Revels v.*

14

*Berryhill*, 874 F.3d 648, 654 (9th Cir.2017).[5]

15

Although Dr. Baylor did not have the opportunity to review all of the records in this case, the

16

ALJ did review the entire record, which included not only Dr. Baylor's opinions, but also the

17

evidence from Dr. Enkema, Dr. Deliria and social worker Bibiloni. Tr. 19-31. Plaintiff also contends

18

that the ALJ erred in giving more weight to Dr. Baylor's opinion than that of Dr. Enkema, who

19

opined that Plaintiff could lift only 10 pounds.[6] However, as noted previously, Dr. Enkema's opinion

20

[5] The SSA has essentially abolished the treating physician rule. The SSA substantially revised its
regulations pertaining to medical evidence, effective March 27, 2017. See 82 Fed. Reg. 5844-

21

5884 (Jan. 18, 2017). The new regulations are effective for claims filed on March 27, 2017 and
after. The existing regulations continue to apply for claim filed before March 27, 2017. See 20

22

C.F.R. § 404.1527, 417.927.

23

[6] Light work is defined in the regulations as involving occasional lifting no more than 20 pounds
at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§
404.1567(b) and 416.967(b).

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 12

was that the limitation would last only 3 to 6 months and the ALJ gave specific and legitimate reasons for discrediting Drs. Enkema and Deliria's opinions and germane reasons for rejecting the assessment from Ms. Biblioni. The ALJ is responsible for determining the credibility of medical evidence. *See Thomas*, 278 F.3d at 958 ("In summary, the ALJ acted in accordance with his responsibility to determine the credibility of medical evidence, and he gave specific, legitimate reasons for discrediting particular opinions.") (citation omitted).

Further, because Dr. Baylor's opinion was consistent with the overall reord, there was substantial evidence upon which the ALJ could rely in determining Plaintiff's RFC. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (explaining that a non-examining doctor's opinion that is supported by other evidence in the record is substantial evidence on which the ALJ can rely).

<u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case **DISMISSED**.

DATED this 1st day of March, 2021.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE - 13